UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 04-1579

CHARLES V. PEERY, MD,

Plaintiff - Appellant,

versus

CAROLINA CARE PLAN INCORPORATED; UNITED
HEALTHCARE INSURANCE COMPANY,

Defendants - Appellees.

Appeal from the United States District Court for the District of
South Carolina, at Charleston.   David C. Norton, District Judge.
(CA-03-457-2-18)

Argued:  March 16, 2005                    Decided:  July 20, 2005

Before WIDENER and SHEDD, Circuit Judges, and HAMILTON, Senior
Circuit Judge.

Affirmed by unpublished opinion.  Judge Shedd wrote the opinion, in
which Judge Widener and Senior Judge Hamilton joined.

**ARGUED:** Douglas Herring Westbrook, Charleston, South Carolina, for
Appellant.   Michael Jay Zaretsky, CHORPENNING, GOOD, CARLET &
GARRISON, Clifton, New Jersey; Noah M. Hicks, II, WILLOUGHBY &
HOEFER, P.A., Columbia, South Carolina, for Appellees.  **ON BRIEF:**
Mitchell M. Willoughby, WILLOUGHBY & HOEFER, P.A., Columbia, South
Carolina, for Appellee Carolina Care Plan, Inc.  Michael W. DeWitt,
CHORPENNING, GOOD & PANDORA CO., L.P.A., Columbus, Ohio; Angus H.
Macaulay, Jr., NEXSEN, PRUET, JACOBS & POLLARD, L.L.C., Columbia,
South Carolina, for Appellee United Healthcare Insurance Co.

---

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

SHEDD, Circuit Judge:

Dr. Charles V. Peery brought suit against Carolina Care Plan, Inc. ("Carolina Care") and United Healthcare Insurance Co. ("United Healthcare") to recover health insurance benefits pursuant to a plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA"). The district court granted summary judgment in favor of Carolina Care and United Healthcare, concluding that the ERISA plan effectively terminated before Peery's claim for benefits arose. For the following reasons, we affirm.

I.

A.

Peery is the sole shareholder of Charles V. Peery, M.D., P.A. (the "Peery Group"), an employer and sponsor of an employee benefits plan (the "Plan") governed by ERISA. The Plan provided that in exchange for the Peery Group's timely payment of premiums, Carolina Care would provide health maintenance organization benefits and United Healthcare would provide out-of-network benefits to plan participants. According to the Plan, the Peery Group was required to make its premium payments "in advance on a monthly basis," with each payment due on the first day of the month. J.A. 19. A grace period of thirty-one days was available for any payment, during which time the Plan would continue in

3

force.  In no event, however, could this grace period extend beyond the date on which the Plan terminated.  The Plan provided for automatic termination in the event of non-payment of premiums:

> **3.5 Grace Period.** . . . This Policy shall automatically terminate retroactive to the last paid date of Coverage, if the grace period expires and any Policy Charge remains unpaid . . . .
>
> . . .
>
> **5.1 Conditions for Termination of This Entire Policy.** This Policy and all Coverage under this Policy shall automatically terminate on the earliest of the dates specified below:
>
> > (a)  Retroactive to the last paid date of Coverage, if any Policy Charge remains unpaid.

J.A. 20.

The Peery Group frequently failed to make timely premium payments.  During the two-year period from August 1997 to September 1999, Carolina Care and United Healthcare threatened to terminate the Plan sixteen different times.  The Plan was terminated once in 1998, but Carolina Care eventually reinstated its coverage.

When the Peery Group failed to make timely payment for coverage in October 1999, Carolina Care invoked the Plan's automatic termination provisions and informed the Peery Group that the Plan would be terminated effective September 30, 1999 -- the last paid date of coverage -- if payment were not made immediately. The Peery Group did not respond to this demand, and on November 30, 1999, Carolina Care notified the Peery Group that the Plan was terminated as of September 30, 1999.

4

During October and November 1999, Carolina Care continued to pay claims of Peery Group employees for services that required up-front payment and for services performed while the Plan was still in force. Carolina Care also paid other claims pursuant to a provision in the Plan authorizing Carolina Care to pay claims that it was not required to pay without incurring any obligation to pay similar claims in the future.[1]

In February 2000, Peery suffered a stroke that required extensive medical care. Mrs. Peery called Kelly Norman, Carolina Care's account service supervisor, to give notice of Peery's condition. According to Mrs. Peery, Norman assured her that Carolina Care would reinstate coverage upon payment of the past-due premiums. Mrs. Peery remitted a payment of $3,899.34 to Carolina Care -- representing the amount of premiums past due plus one additional month's premium. Mrs. Peery also completed an automatic-bank-draft form and returned it to Carolina Care along with a voided check. On February 18, 2000, Carolina Care notified Peery that it was declining to reinstate the Plan based on the Peery Group's payment history and that the Plan remained terminated

---

[1]The Plan provided that Carolina Care "may, in certain circumstances for purposes of overall cost savings or efficiency and in its sole discretion, Cover services which would otherwise not be Covered. The fact that [Carolina Care] does so in any particular case shall not in any way be deemed to require it to do so in other similar cases." J.A. 45.

as of September 30, 1999.  Carolina Care later returned Mrs. Peery's check.


                                B.


     Peery filed this lawsuit in February 2003, seeking recovery of benefits under the Plan.  Peery subsequently amended his complaint to assert that Carolina Care violated S.C. Code Ann. § 38-71-760 (2000) ("§ 760") by failing to give adequate notice of termination of coverage.  Section 760 provides, in pertinent part, as follows:

> (a) This section applies to a group accident, group health, or group accident and health insurance or health maintenance organization policy or certificate that is delivered, issued for delivery, or renewed in this State which provides hospital, surgical, or major medical expense insurance, or any combination of these coverages, on an expense incurred basis. . . .
>
> (b) If a policy or contract subject to this article provides for automatic discontinuance of the policy or contract after a premium or subscription charge has remained unpaid through the grace period allowed for the payment, the carrier is liable for valid claims for covered losses incurred prior to the end of the grace period.
>
> (c) If the actions of the carrier after the end of the grace period indicate that it considers the policy or contract as continuing in force beyond the end of the grace period such as by continuing to recognize claims subsequently incurred, the carrier is liable for valid claims for losses beginning on or before the effective date of the written notice of discontinuance to the policyholder or other entity responsible for making payments or submitting subscription charges to the carrier. . . .
>
> (d) In addition to the notice required under Section 38-71-870 or Section 38-71-675, any notice of discontinuance by the carrier shall include a request to the group

policyholder or other entity involved to notify certificate holders covered under the policy or subscriber contract of the date when the group policy or contract will discontinue and advise that, unless otherwise provided in the policy or contract, the carrier is not liable for claims for losses incurred after such date. The notice shall also advise, when the plan involves certificate holder contributions, that, if the policyholder or other entity continues to collect contributions for the coverage beyond the date of discontinuance, the policyholder or other entity may be held solely liable for the benefits for which the contributions are collected.

(e) The carrier shall prepare and furnish to the policyholder or other entity at the same time an appropriate sample notice form to be distributed to the certificate holders concerned indicating the effective date of the discontinuance and urge the certificate holders to refer to their certificates or contracts in order to determine what rights are available to them as a result of the discontinuance.

. . . .


C.

Carolina Care argued that ERISA preempts § 760 and the state statute is not saved by 29 U.S.C. § 1144(b)(2)(A). Relying upon Kentucky Association of Health Plans, Inc. v. Miller, 538 U.S. 329 (2003), Carolina Care argued that the relevant provisions of § 760 do not "substantially affect the risk pooling arrangement between the insurer and insured" and so are not saved from preemption under § 1144(b)(2)(A). Id. at 342. According to Carolina Care, it did not violate the statute's notice provisions in any event because those provisions do not apply where a plan terminates automatically for nonpayment.

Peery argued that § 760 does affect the risk pooling arrangement between Carolina Care and its insureds and so is saved from preemption. According to Peery, § 760 required Carolina Care to provide coverage despite the Peery Group's nonpayment of premiums because Carolina Care's conduct suggested that it considered the Plan to remain in effect beyond the grace period. Since Carolina Care never provided a written notice of termination that complied with the specific requirements of § 760, Carolina Care was required to provide coverage for Peery's claim.

Both parties moved for summary judgment. The district court held a hearing on the motions and later entered an order granting summary judgment to the defendants. Rather than decide the ERISA preemption issue, the district court decided the merits of Peery's claims under both ERISA and § 760. Assuming that § 760 was preempted by ERISA, as the defendants argued, the district court concluded that the Plan had terminated under the automatic termination provisions, such that Peery was not entitled to benefits. Assuming that § 760 was not preempted by ERISA, as Peery argued, the district court concluded that Carolina Care was not required to provide the notice described in the statute and the Plan terminated when the relevant grace period expired. This appeal followed.

8

## II.

We review de novo the district court's order granting summary judgment to the defendants. See Bailey v. Blue Cross & Blue Shield, 67 F.3d 53, 56 (4th Cir. 1995). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

Peery argues on appeal that the district court erred in assuming that § 760 is preempted by ERISA and by ruling that Carolina Care complied with the statute even if it was not preempted by ERISA. We need not decide whether ERISA preempts § 760; rather, we assume, as Peery argues, that § 760 is not preempted. Further, although the defendants contend that § 760 does not apply to Carolina Care because it is not the type of insurer sought to be covered by the statute, we assume that the statute applies in this case. It is undisputed that Carolina Care did not provide the particularized notice of termination described in § 760. Therefore, the dispositive question is whether Carolina Care was required to provide such notice at all.

## A.

Carolina Care purported to terminate coverage under the Plan pursuant to the Plan's automatic termination provisions. In two different provisions, the Plan stated that it would "automatically

9

terminate" if the grace period expired and the Peery Group had not made the scheduled premium payment. Section 760 allows such an automatic termination, stating that "[i]f a policy or contract subject to this article provides for automatic discontinuance of the policy or contract after a premium or subscription charge has remained unpaid through the grace period allowed for the payment, the carrier is liable for valid claims for covered losses incurred prior to the end of the grace period." S.C. Code Ann. § 38-71-760(b). Likewise, the relevant administrative regulation specifically provides that "[n]o written notice of termination shall be required to be given for termination due to nonpayment of premium." S.C. Code Ann. Regs. 69-22.IV.B.4 (2004).[2]

Peery does not dispute the fact that the grace period for the October 1999 premium payment expired without payment by the Peery Group. Pursuant to the terms of the Plan, coverage automatically terminated retroactive to the last paid date of coverage, i.e., September 30, 1999. Neither the Plan nor the statute explicitly required it, but Carolina Care gave the Peery Group written notice of the termination of coverage. Carolina Care's decision to provide such notice did not subject Carolina Care to the particular requirements of the statute. Because Peery's claim arose after

---

[2]We have held that an insurer need not "make some affirmative acknowledgment" of automatic termination such as occurred in this case. See Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 58 (4th Cir. 1992).

coverage had terminated, Carolina Care was not required to pay benefits.

## B.

Peery contends, however, that Carolina Care's conduct indicated that it deemed the Plan to continue in force beyond the end of the grace period and thus was required to provide written notice of termination that complied with specific notice requirements. "If the actions of the carrier after the end of the grace period indicate that it considers the policy or contract as continuing in force beyond the end of the grace period such as by continuing to recognize claims subsequently incurred, the carrier is liable for valid claims for losses beginning on or before the effective date of the written notice of discontinuance." S.C. Code Ann. § 38-71-760(c). Such written notice of discontinuance must comply with the particular requirements described in § 760(d) and (e).

The November 30, 1999, letter stated in the plainest terms that Carolina Care deemed the Plan terminated as of September 30, 1999:

> The grace period for receiving premium payment for the month(s) of OCTOBER 1999 has expired. As of today's date, we have not received the premium due.

> Your contract with [Carolina Care] has therefore been terminated. This termination is due to non-payment, in accordance with South Carolina Department of Insurance

11

Rule 69-22. All health care benefits with [Carolina Care] are cancelled effective September 30, 1999.

J.A. 231. This letter is sufficient to indicate Carolina Care's understanding that the Plan had been terminated. Carolina Care's continued payment of certain claims did not indicate a contrary position, since the Plan itself provided that Carolina Care could provide benefits gratuitously without undertaking any obligation to provide other benefits in similar circumstances. The fact that Carolina Care paid benefits for claims arising before the termination date and claims for services requiring up-front payment does not indicate that Carolina Care considered the Plan still in force. Because Carolina Care's actions did not in any way indicate that it considered the Plan to continue after the date of automatic termination, § 760(c) is not applicable in this case and did not require Carolina Care to provide the particularized notice required by § 760(d) and (e).

## III.

Even if Peery is correct that § 760 is saved from ERISA preemption, and even if he is correct that the statute applies to the defendants, the district court correctly ruled that the defendants did not violate that statute but followed the terms of the Plan. Because we conclude that the defendants are entitled to judgment as a matter of law, the order of the district court is

AFFIRMED.

12